TYSON, Presiding Judge.
The indictment charged William McKen-ley Martin III, alias William M. Martin III, with the forgery of a check drawn on the Union Bank and Trust Company of Montgomery, Alabama, on the account of Mrs. Louise S. Turner, 1302 South Hull Street, Montgomery, Alabama, dated July 12,1974, in the amount of $75.00, with William M. Martin III as payee. The signature is that of Louise S. Turner, and the check number is 4216. On the reverse side thereof is the endorsement, William M. Martin III.
The appellant filed a demurrer to this indictment, challenging its legal sufficiency, which was overruled following a hearing. The case came on for trial, the jury found the appellant guilty as charged, and the trial court entered judgment which set sentence at fifteen months imprisonment in the penitentiary.
The appellant filed both a motion in arrest of judgment and a motion for new trial, each of which challenged the weight and sufficiency of the evidence and which were denied following a hearing thereon.
Mrs. Louise S. Turner testified that she was a resident of 1302 South Hull Street in Montgomery, Alabama. On July 12, 1974, she indicated that she maintained a bank account with the Union Bank and Trust Company of Montgomery, Alabama. She testified that she had gone to the A & P store on Cloverdale Road in Montgomery with her cousin and was seated in her cousin’s automobile while her relative was in the store buying groceries for both of them. She stated that she did have some problems with her eyesight, but could see well enough to recognize people and to read a newspaper except for the fine print. She related that since an incident, which occurred on July 12, 1974, her eyes were worse and she had had to see a physician for treatment.
Mrs. Turner related that in her purse, which was on the seat, were two personalized checks, Nos. 4216 and 4217, each of which bore her signature, Louis S. Turner, but which were otherwise in blank. She stated that after viewing State’s Exhibit No. 1 (check No. 4216), she had not authorized anyone to write in the amount, $75.00, in figures or in words, nor had she authorized anyone to make the check payable to William M. Martin III as she did not know this person, nor had she ever heard of him. She stated that when she last saw the check that it was in blank. Mrs. Turner stated that when she noticed the checks were missing, she reported this immediately to the Union Bank and Trust Company and put in a stop payment order, then she notified the Montgomery Police Department, giving them the numbers on the two checks. This occurred about 10:30 in the morning.
Linda Hester testified that she was formerly Linda Boyd, and on July 12, 1974, *1148 was a drive-in teller at the Mt. Meigs branch of the Union Bank and Trust Company in Montgomery. She said that shortly after 11:00 that morning, a black male in a small blue Opel automobile drove up to the window and presented a check drawn on the account of Louise S. Turner in the amount of $75.00. As she had just been notified of the stop payment order, she asked the man for his driver’s license, he gave it to her and she wrote it down and also the tag number of his automobile, which was a Mobile number, on the back of the cheek. She said that she then called into the office of the bank to verify if this was one of the checks on which they had just received a stop payment order. Upon being advised that it was, she then handed the man back the check and the driver’s license and told him that it would be necessary for him to come inside and see the manager about the check. She stated that the man then drove off in a hurry, mumbling.
On cross-examination she testified that the male had a small goatee on his chin and was wearing a sun visor, something in the nature of a tennis cap, that he had an Afro-type hairdo, and was wearing jeans and a light colored sport shirt..
Mrs. Hester stated that shortly after 2:00 that afternoon she went to Montgomery Police Headquarters and there viewed six black males in a lineup, that after just a few moments she positively identified the person in position No. 3 as being the same man who had presented the check for payment to her that morning. She then made a positive in-court identification of the appellant and stated that she had not had any prior conversation with anyone before she picked him from the police lineup. She further stated that she had twenty-twenty vision and that she was able to get a good look at him when he presented the check to her at the teller window.
Montgomery Police Officer W. W. Strain received information on the morning of July 12, 1974, that there were some stolen checks and to be on the lookout for a small blue Opel automobile with the license number 2A27177. He indicated that he found a vehicle answering this description parked by the men’s dormitory at Alabama State University. He then inquired to the security police as to the owner and was advised that William M. Martin III owned the vehicle in question. He then advised the appellant of his constitutional rights, placed him under arrest, and took him to Police Headquarters.
On cross-examination Officer Strain stated that he noticed the automobile on the Alabama State Campus shortly after 1:00 p. m. and that it was nearly 2:00 when he took the appellant to Police Headquarters.
Montgomery Police Sergeant J. D. Poster testified that on July 12, 1974, he set up a lineup at Police Headquarters which contained six black males. From the record:
“Q. So you have a spread of all black males ages anywhere from eighteen to twenty-five and four to six people twenty-three, twenty-four, and twenty-five?
“A. Yes, sir.
“Q. Roughly in the same age category?
“A. Yes, sir.
“Q. Now, I will ask you to call out by name the relative height of each of the people participating in that lineup?
“A. A1 Jeter is six foot; Chris Smith is five foot eleven; William Martin is five, ten; William Mae is five foot eleven; Carl Marshall is six foot one; Zackry Morgan is five foot six.
“Q. All right. Give the relative weight of each of the individuals involved in the lineup?
“A. A1 Jeter is 180 pounds; Chris Smith 195 pounds; William Martin, 155; William Mae, 189; Carl Marshall, 176; and, Zackry Morgan, 132.
“Q. Now, going by each of the individuals, describe the clothing, the shirt, pants and shoes as you recall it?
“A. A1 Jeter wore a black shirt, blue pants, sandals; Chris Smith, yellow shirt, red and blue pants, brown shoes; William Martin, yellow shirt, green pants, sandals; William Mae had a blue shirt, orange pants, brown shoes; Carl Marshall
*1149 had a blue and white shirt, green pants, sandals; Zackry Morgan had a red and white shirt, black pants and sandals.
“Q. All right. Now, I will ask you who, if anyone, observed this lineup?
“A. It was viewed by four individuals. “Q. State who they are for the record? “A. Linda Kay Boyd, Louise S. Turner, Gladdis Hammonds, and Bertie Reeves.
“Q. Now, let me ask you this: Did the four view it at the same time?
“A. No, sir, they did not.
“Q. Did anybody make a positive I.D. of those four people?
“A. Yes, sir, they did.
“Q. Who did?
“A. Linda Kay Boyd and Louise S. Turner.”
Officer Foster indicated that Mrs. Hester, or Boyd at the time, did not hesitate when she viewed the lineup and identified the appellant who was in position No. 3. He also stated that Mrs. Turner identified him, and that he had not given either of them any instructions other than to just view the lineup. Officer Foster testified that appellant Martin voluntarily submitted to the lineup and that there was no attorney present, that no one asked for an attorney at this time.
The appellant’s motion to suppress the lineup identification was overruled, as was his motion to exclude the State’s evidence, and his motion for a directed verdict at the close of the State’s case.
Steve Shelton testified that he lived at 1516 Hamilton Street in Montgomery, and was a student at Alabama State University in July, 1974. He testified that he knew the appellant, Billy Martin, and that on the morning in question, shortly after 10:00, Martin had asked him to go play basketball, that soon thereafter they ran into Daryl Kritz, and the three of them rode out to the Montgomery Mall in order for Billy Martin to look at some blue jeans at the Hipster Shop. He stated they did so, then drove back and stopped at a grocery store, and that he and Martin went inside. He said that when they came back out, Kritz and the automobile was gone, and that it was about twenty-five minutes later before Kritz returned. He stated that shortly thereafter as they were driving back toward the campus, he saw Daryl Kritz pull out a BankAmericard and asked him how to use it. He said that Billy then dropped him off at the campus at about twenty minutes to twelve. He also said that he saw Daryl Kritz throw something in the trash before he got out of the car. He stated that he knew Billy Martin’s reputation to be that of a truthful and honest person.
William M. Martin III testified that he lived in Petersburg, Virginia, but that he had been a student at Alabama State University from 1972 to 1975, that after finishing he had been teaching in the public school system at Petersburg. He stated that on the morning of July 12, 1974, he was awakened by his roommate, and one Daryl Kritz was in the room, that Daryl Kritz asked him if he could borrow his automobile. He said that this was about 9:30 and that he did lend his car to Kritz. He said that shortly after 10:00 he was walking across the campus to play basketball when Kritz returned, and that he then got in the car with Steve Shelton and they drove out to the Mall. He said that after looking around for some clothes, they then drove by a grocery store, that he and Shelton got out and went in, and when they came back out Daryl Kritz was gone, and so was his automobile. He said about twenty to twenty-five minutes later Kritz reappeared and that on the way home he saw him reach under the seat and throw something in a trash can. He noticed that Daryl Kritz had a couple of credit cards and he thought one was a BankAmericard. He testified that when the police officers came looking for him at the Alabama State Dormitory, he voluntarily went with them to Police Headquarters and voluntarily participated in a lineup. He testified that he was a veteran of the Vietnamese War and was receiving monthly checks from the Veter *1150 an’s Administration, and in addition was receiving some money from an educational policy left to him following his father’s death. He stated that between these two he was able to pay for his college education. He testified that he was asked for his driver’s license, but could not locate it, and he testified that on the morning in question he wore a yellow and gray striped shirt and green short pants which had been cut off. He stated that Daryl Kritz was slightly taller than he, that both were slender, but that Kritz was about twelve to fifteen pounds heavier, and that their hair was similar in length. Following his arrest, he notified his uncle, who lived in Montgomery, and asked him to get him a lawyer.
The appellant’s uncle, Burtram Martin, testified that his nephew had telephoned him, that he had never known of his nephew being in any difficulty, and that his reputation for truth was good.
Montgomery Attorney James C. Heard testified that in the latter part of July, 1974, he went to the Union Bank and Trust Company and talked with Linda Boyd, the teller. He stated she told him that a man drove up in a small blue car and he had an Afro haircut. She further stated that the man was about medium build, light skin, but that she could not remember his facial characteristics, or if he had hair. She told him that she had asked for his driver’s license and that he gave it to her, that she put the driver’s license and tag numbers on the check. She also stated that that afternoon she had gone to a lineup and looked at a number of people and had picked out the one who she recognized as being the man driving the blue automobile.
Charles Miller, Assistant Dean of students of Alabama State University testified as a character witness in behalf of the appellant.

*1151

The indictment in this cause clearly charges forgery in the first degree as set forth in Title 14, Section 199, Code of Alabama 1940. The indictment in this cause follows Title 15, Section 259, Form 63, and as such is not subject to demurrer. Davis v. State, 165 Ala. 93, 51 So. 239; Newsum v. State, 10 Ala.App. 124, 65 So. 87; Brown v. State, 30 Ala.App. 339, 7 So.2d 24; Smith v. State, 35 Ala.App. 580, 50 So.2d 791.
II
The addition of the endorsement to the indictment in no way weakened its legal force or averments, and as such was proper. Smith v. State, 35 Ala.App. 580, 50 So.2d 791; Wyatt v. State, 257 Ala. 90, 57 So.2d 366.
III
Appellant contends there was a fatal variance between the pleading and proof and that his motion to exclude should have been granted.
In Ex parte State, 213 Ala. 1, 104 So. 40, we find:
“A consideration of the cases will disclose as elements of forgery (1) that there must be a false making — and this may be accomplished by ‘the fraudulent application of a false signature to a true instrument, or a real signature to a false’ instrument; (2) that the essence of forgery is an intent to injure or defraud when the act complained of is done (Agee v. State, 113 Ala. 52, 21 So. 207; Denson v. State, 122 Ala. 100, 26 So. 119), and it is not necessary that any actual injury should result from the offense (Denson v. State, supra); and (3) it is of ‘no consequence whether the counterfeited instrument be such as if real would be effectual to the purpose it intends so long as there is a sufficient resemblance to impose on those to whom it is uttered.’ Burden v. State, 120 Ala. 388, 25 So. 190, 74 Am.St.Rep. 37, L.R.A.1918B, p. 1192, note; 7 Ency.Dig. Ala.Rep. 477.”
In Hamilton v. State, 35 Ala.App. 570, 50 So.2d 449, we find:
“Forgery in the first degree is defined in Section 199, supra [Title 14, Section 199, *1152 Code of Alabama 1940]. It pertains to the altering, forging, or counterfeiting of any bill, note, draft, check, certificate or other evidence of debt issued by banks, either state or national. . . . ”
We are of the opinion that the applicable elements of forgery were here established and that the evidence clearly supports the conviction in question. Jones v. State, 53 Ala.App. 497, 301 So.2d 260; Simmons v. State, 55 Ala.App. 679, 318 So.2d 374; and Powers v. State, Ala.Cr.App., 333 So.2d 205.
We have carefully reviewed this record as required by law and find no error therein. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.